ORIGINAL

RECEIVED

MAY - 9 2000

CLERK'S OFFICE
U S DISTRICT COURT

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

File No._____

|  |  |  |
|---|---|---|
| MANUEL L. SPILLMAN<br>  Petitioner, | ) )<br>) | Michigan Supreme Court<br>No.114022 |
| vs | ) )<br>) | Michigan Court of Appeals<br>No.203438 |
| ANDREW JACKSON (WARDEN)<br>  Respondent. | ) )<br>) )<br>) | Wayne Circuit Court<br>No.96-003268 |

00-72203.

DENISE PAGE HOOD

MAGISTRATE JUDGE CARLSON

RECEIVED

MAY 3 1 2000

CLERK'S OFFICE
U.S. DISTRICT COURT

PETITION FOR A WRIT OF HABEAS CORPUS

TO THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

Prepared by Anthony Flint for
Manuel L. Spillman #203663
Petitioner in Pro Per
3201 Bemis Rd.
Huron Valley Men's Facility
Ypsilanti, MI 48197

U S DIST COURT CLERK
EAST DIST MICH
DETROIT

'00 JUN -7 A9:11

5

## TABLE  OF  CONTENTS

Index of Authorities...............................................1

Petition for Writ of Habeas Corpus.............................1

Exhaustion of Remedies.........................................2

Jurisdiction...................................................4

Questions Presented............................................4

Constitutional Provisions......................................4

General Review.................................................5

Statement of the Case..........................................6

ARGUMENT I. PETITIONER'S CONVICTION MUST  BE OVERTURNED
            BECAUSE THERE WAS INSUFFICIENT EVIDENCE  TO
            FIND FOR THE OFFENSE OF PREMEDITATED MURDER
            THUS THE MOTION FOR DIRECTED VERDICT SHOULD
            HAVE BEEN GRANTED...................................12

ARGUMENT II PETITIONER'S CONVICTION SHOULD  BE  REVERSED
            BECAUSE THE TRIAL COURT IMPROPERLY PERMITTED
            ADMISSION  OF  THE  PRELIMINARY  EXAMINATION
            TESTIMONY  FINDING    THAT    DUE    DILIGENCE
            HAD BEEN SHOWN......................................17

ARGUMENT III PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF
             APPELLATE COUNSEL AS GUARANTEED BY CONST 1963
             ART 1, §20; US CONST AM VI & XIV.................27

RELIEF REQUESTED...............................................35

VERIFICATION...................................................35

INDEX OF AUTHORITIES

Agan v Singletary,
12 F3d 1012 (11th Cir, 1994)..................................28

Alcorn v Smith,
781 F2d 58 (6th Cir, 1986)...................................34

Allen v US,
938 F2d 644 (6th Cir, 1991)..................................3

Barber v Page,
390 US 719;88 S Ct 1318 (1968)...............................19

Brecht v Abrahmson,
113 S Ct 1710;123 L Ed2d 353 (1992)..........................5

Chaney v Lewis,
801 F2d 1191 (9th Cir, 1986).................................5

Evitts v Lucey,
469 US 387;105 S Ct 830;83 L Ed2d 821 (1985)..............28,34

Gray v Greer,
800 F2d 644 (7th Cir, 1985)..................................28

Groseclose v Bell,
895 F Supp 935 (MD Tenn, 1995);
aff'd 130 F3d 1061 (6th Cir, 1997)...........................33

Honing v Doe,
484 US 305;108 S Ct 592;98 L Ed2d 686 (1988).................3

In re Winship,
397 US 358;90 S Ct 1068;25 L Ed2d 368 (1970).................12

Jackson v Virginia,
443 US 307; 99 S Ct 2781;61 L Ed2d 560 (1979)................12

Jones v Barnes,
463 US 745;103 S Ct 3308;77 L Ed2d 987 (1983)................28

Lewis v Alexander,
11 F3d 1349 (6th Cir, 1993)..................................34

Lunsford v Juamo,
155 F3d 1178 (10th Cir, 1998)................................3

Matire v Wainwright,
811 F2d 1430 (11th Cir, 1987)................................29

Mayo v Henderson,
13 F3d 528 (11th Cir, 1987)..................................29

Motes v US,
    178 US 458;20 S Ct 993;44 L Ed 397 (1900)..................24,26

Murray v Carrier,
    477 US 478;106 S Ct 2639;91 L Ed2d 397 (1986)................29

Negri v Slotkin,
    397 Mich 105;244 NW2d 98 (1976)............................28

Ohio v Roberts,
    448 US 56;100 S Ct 2531;65 L Ed2d 397 (1986)..........17,19,21

O'Neil v McAninch,
    115 S Ct 992;130 L Ed2d 947 (1995).........................16

Page v US,
    884 F2d 300 (7th Cir, 1989)................................29

People v Anderson,
    389 Mich 155;205 NW2d 461 (1973)..............14n1,29,30,31,34

People v Anderson,
    209 Mich App 527;531 NW2d 780 (1994)........................13

People v Ateley,
    393 Mich 298;220 NW2d 465 (1974)...........................14

People v Bass, (On Reh)
    223 Mich App 241;565 NW2d 897...............................34

People v Briseno,
    211 Mich App 11;535 NW2d 559 (1995)...................17,21,26

People v Caballero,
    184 Mich App 636;459 NW2d 80 (1990);
    lv den 437 Mich 884........................................33

People v Carter,
    395 Mich 434;236 NW2d 500 (1975)...........................13

People v Conner,
    182 Mich App 674;452 NW2d 877 (1990).......................17

People v Cummings,
    171 Mich App 577;430 NW2d 740 (1988).......................21

People v Degraffenreid,
    19 Mich App 702;173 NW2d 317 (1969)........................29

People v Dye,
    431 Mich 58;427 NW2d 501 (1988)...................18,20,24,26

People v Gill,
    43 Mich App 598;204 NW2d 699 (1972)........................15

People v Hampton,
    407 Mich 354;285 NW2d 284 (1979);
    cert den 449 US 885;101 S Ct 239;66 L Ed2d 560 (1980)........12

People v James,
    184 Mich App 457;458 NW2d 911 (1990).............19,20,25,26,31

People v Johnson,
    208 Mich App 137;526 NW2d 617;
    lv den 450 Mich 937 (1994)................................13,16

People v Kurylczyk,
    443 Mich 298;505 NW2d 528 (1993)............................30

People v Oster,
    97 Mich App 122;294 NW2d 253 (1980)..........................3

People v Pauli,
    138 Mich App 530;361 NW2d 359 (1984)........................27

People v Percy,
    127 Mich App 1;338 NW2d 398 (1983)...........................3

People v Plummer,
    229 Mich App 293;___ NW2d ___ (1998)........................15

People v Rattelle,
    173 Mich App 196;433 NW2d 401 (1988)........................16

People v Reed,
    449 Mich 375;535 NW2d 496 (1995).........................27,28

People v Starr,
    89 Mich App 342;280 NW2d 519 (1979).........................21

People v Wilson,
    20 Mich App 410;174 NW2d 79 (1969)..........................31

People v Wilson,
    159 Mich App 345;406 NW2d 294 (1987)........................34

People v Young,
    114 Mich App 61;318 NW2d 606 (1982).........................15

Pointer v Texas,
    380 US 400;85 S Ct 1065;13 L Ed2d 923 (1965)................18

Ratliff v US,
    999 F2d 1023 (6th Cir, 1993)............................27,32

Rust v Zent,
    17 F3d 155 (6th Cir, 1994)...................................2

Spalding v Spalding,

MCLA 750.227b...............................................1,6

MCLA 750.316................................................1,6

MSA 28.424(2)...............................................1,6

MSA 28.548..................................................1,6

28 USC §2254..........................................1,2,3,4,5

Other Authority

Black's Law Dictionary 5th Ed (1979)..........................21

CJI2d 5.12...................................................22

121 Congress Record #37416 (1975)............................4

355 Mich 382;94 NW2d 810 (1955)...............................20

Strickland v Washington,
466 US 668;104 S Ct 2052;80 L Ed2d 674 (1984).......27,28,31,32

Sumner v Mata,
449 US 539;101 S Ct 764;66 L Ed2d 722 (1981)..................5

Sumner v Mata,
455 US 591;102 S Ct 1303;71 L Ed2d 480 (1982)................5

US v Brown,
149 US App DC 43;461 F2d 134 (1972)..........................30

US v Collins,
416 F2d 696 (4th Cir, 1969)..................................30

US v Cook,
45 F3d 388 (10th Cir, 1995)...............................28,29

US v Cronic,
446 US 648;104 S Ct 2039;80 L Ed2d 657 (1984)...............34

US v Fernandez,
456 F2d 638 (2d Cir, 1972)...................................31

US v Lane,
474 US 438;106 S Ct 725;88 L Ed2d 814 (1986).................5

US v Quinn,
901 F2d 522 (6th Cir, 1990)...............................25,26

Washington v Smith,
48 F Supp2d 1149 (ED Was, 1999)..............................25

West v Seabold,
73 F3d 81 (6th Cir, 1996)....................................32

Workman v Tate,
957 F2d 1339 (6th Cir, 1992)................................34

Court Rules, Constitutions and Statutes,

MCR 6.500.....................................................3

MRE 804...................................................17,20

Const 1963, Art 1, §20.........................1,4,17,27,34

US Const Am V................................................17

US Const Am VI.............................1,5,17,27,34

US Const Am XIV...........................1,5,17,27,34

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

File No._____

| | | |
|---|---|---|
| MANUEL L. SPILLMAN<br>   Petitioner, | ) | Michigan Supreme Court<br>No. 114022 |
| vs | ) | Michigan Court of Appeals<br>No.203438 |
| ANDREW JACKSON (WARDEN)<br>   Respondent. | ) | Wayne Circuit Court<br>No.96-003268 |
| MANUEL L. SPILLMAN<br>PETITIONER IN PRO PER | ) | |
| ATTORNEY GENERAL'S OFFICE<br>COUNSEL FOR RESPONDENT | ) | |

RECEIVED
MAY - 2000
CLK
US DC

PETITION FOR WRIT OF HABEAS CORPUS

   The foregoing Petition seeks issuance of a WRIT of
HABEAS CORPUS, pursuant to 28 USC §2254, on const-
itutional grounds cognizable under the VI, and XIV
Amendments of the United States Constitution.

   Petitioner Manuel L. Spillman is a state prisoner in the
custody of the Michigan Department of Corrections (MDOC), and
is presently confined in the Huron Valley Men's Facility, in
Ypsilanti, Michigan. Petitioner asserts that he is being
unconstitutionally detained in custody of the MCOC by virtue
of a judgment of sentence entered on February 25, 1997.
Petitioner was sentenced to life without parole for his first
degree murder conviction, (MCLA 750.316; MSA 28.548), plus a
consecutive two years for his felony firearm conviction, (MCLA
750.227b; MSA 28.424[2]).

1

## EXHAUSTION OF STATE REMEDIES

Pursuant to 28 USC §2254, the state prisoner must exhaust his available state remedies by presenting his constitutional claims to the state courts. The burden of proving exhaustion lies with the Petitioner. <u>Rust v Zent</u>, 17 F3d 155,160 (6th Cir, 1994). (cite omitted). The exhaustion requirement is satisfied when the claim(s) is presented to the highest court of the state in which the petitioner was convicted. id. (cite omitted).

As to each claim presented for habeas review, Petitioner has fully exhausted all available state remedies pursuant to 28 USC §2254(b), in the following manner:

(A) Petitioner pursued an appeal as of right by and through appellate counsel Daniel J. Rust and raised the following grounds for relief:

I. DEFENDANT'S CONVICTION MUST BE REVERSED BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO FIND FOR THE OFFENSE OF PREMEDITATED MURDER. THUS, THE MOTION FOR DIRECTED VERDICT SHOULD HAVE BEEN GRANTED.

II. DEFENDANT'S CONVICTIONS SHOULD BE REVERSED BECAUSE THE TRIAL COURT IMPROPERLY PERMITTED ADMISSION OF THE PRELIMINARY EXAMINATION TESTIMONY, FINDING THAT DUE DILIGENCE HAD BEEN SHOWN.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished per curiam on December 18, 1998. Petitioner then appealed to the Michigan Supreme Court adding a claim of ineffective assistance of appellate counsel. The Supreme ordered the prosecutor to 'show cause' why leave should not be granted on the due diligence issue. After considering the prosecutor's response, the Michigan Supreme Court denied the application on January 31, 2000.

Petitioner asserts that as to issues one and two, there is no available state remedies to pursue these claims. As to claim three, there is no remedy available to protect the rights of the Petitioner. In Michigan defendants may file in the trial court a motion for post-conviction relief under MCR 6.500 et seq. However, case law 'clearly' indicates that the proper remedy for ineffective assistance of appellate counsel is to grant a new appeal. People v Percy, 127 Mich App 1; 338 NW2d 398 (1983); People v Oster, 97 Mich App 122; 294 NW2d 253 (1980). See also Allen v US, 938 F2d 644 (6th Cir, 1991). The problem with this remedy lies in the fact that trial courts do not have the authority or jurisdiction to grant such relief.

The federal habeas corpus statute explicitly requires exhaustion of state judicial remedies. Title 28 USC §2254 provides in pertinent part:

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that...the applicant has exhausted the remedies available in the courts of the State; or there is an absence of available State corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant." (Emphasis added). id §2254(b).

Thus, an ineffective assistance of appellate counsel claim is not cognizable in 6.500 proceedings because the trial court does not have jurisdiction or the authority to grant such relief. Additionally, federal courts have previously stated that where the available remedies are inadequate exhaustion is not required. See, Lunsford v Juamo, 155 F3d 1178 (10th Cir, 1998), citing Honing v Doe, 484 US 305,327; 108 S Ct 592,606; 98 L Ed2d 686 (1988). Senator Williams once stated, "[E]xhaustion...should

3

not be required...in cases where such exhaustion would be futile either as a legal or practical matter." See 121 Cong. Rec. 37416 (1975). Nowhere in the habeas corpus statute does it indicate that litigants are required to exhaust futile remedies. In fact the statute clearly allows for exceptions in cases like this. See Title 28 USC §2254 (1)(A)(B)(i)(ii). Thus, Petitioner has fully exhausted his remedies as required by statute.

## JURISDICTION

This Honorable Court has jurisdiction pursuant to 28 USC §2254. Petitioner has exhausted all available and adequate remedies on each issue presented herein.

## QUESTIONS PRESENTED

I. SHOULD A WRIT OF HABEAS CORPUS ISSUE BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO FIND FOR THE OFFENSE OF PREMEDITATED MURDER: ALTERNATIVELY, SHOULD THE WRIT BE ISSUED BECAUSE THE TRIAL COURT FAILED TO GRANT THE DEFENSE MOTION FOR DIRECTED VERDICT?

II. SHOULD A WRIT OF HABEAS CORPUS ISSUE BECAUSE THE TRIAL COURT IMPROPERLY ADMITTED PRELIMINARY EXAMINATION TESTIMONY FINDING THAT DUE DILIGENCE HAD BEEN SHOWN?

III. SHOULD PETITIONER BE GIVEN A NEW APPEAL OF RIGHT ON THE GROUNDS OF INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL?

## CONSTITUTIONAL PROVISIONS

The Sixth Amendment of the United States Constitution states in pertinent part:

"In all criminal prosecutions the accused shall enjoy the right to...be confronted with the witnesses against him...and to have the assistance of counsel for his defense."

4

The Fourteenth Amendment of the United States Constitution states in pertinent part:

"No state...shall deprive any person of life, liberty, or property without due process of law..."

### GENERAL REVIEW

Generally, before a writ of habeas corpus may issue, the Petitioner must show by convincing evidence that he is in custody "in violation of the Constitution or laws or treaties of the United States." 28 USC §2254(a). Habeas relief may be granted if the unconstitutional trial error 'had a substantial and injurious effect or influence in determining the jury's verdict...and resulted in actual prejudice.' Brecht v Abrahamson, ___ US ___; 113 S Ct 1710,1712; 123 L Ed2d 353,373 (1992). (Citing US v Lane, 474 US 438,449; 106 S Ct 725,732; 88 L Ed2d 814 (1986).

Findings of fact made by the trial or appellate court after a full, fair and adequate hearing are presumed to be correct and are binding on the federal court. 28 USC §2254(d); Sumner Mata, 449 US 539,546; 101 S Ct 764,768-769; 66 L Ed2d 722 (1981). However, this presumption does not apply to mixed questions of law and fact. Sumner v Mata, 455 US 591,97; 102 S Ct 1303,1306-07; 71 L Ed2d 480 (1982). Such questions are entitled to a complete and independent 'de novo' review. Chaney v Lewis, 801 F2d 1191,1194-95 (9th Cir, 1986), (and cases cited).

## STATEMENT OF THE CASE

(1) On February 3, 1997, before the Honorable Michael F. Sapala in the Recorder's Court, a jury trial was held in the matter of People v Manuel L. Spillman, Recorder's No. 96-03268.

(2) Petitioner was charged with first degree murder, MCLA 750. 316; MSA 28.548, and felony firearm, MCLA 750.227b; MSA 28.424(2). It was alleged that on or about March 30, 1996, at the Indigo Club located at 6669 Van Dyke, city of Detroit, County of Wayne, State of Michigan, Petitioner did while armed with a weapon, kill and murder Rudolph Spann with premeditation.

(3) The people were represented by Michael Wagner, assistant prosecutor. Petitioner was represented by Mark A. Brown. The prosecution presented the following witnesses: Gloria Ray, Melvin Thomas, Charles Parker, Kiambu Batts, Rueben Rambus, Chana Willis, Detroit Police officers Randy Richardson and David Pauch, Diquita Gibson, Wayne County Medical Examiner Doctor Sawait Kanluen, Christopher Coyle, and Lokesia Mosley. The people also presented photographs and diagrams of the location as exhibits.

(4) The defense attorney abandoned the diminished capacity defense. (TT1-3; TT=trial transcript and following number denotes the volume and page reference). A jury was selected and given preliminary instructions and thereafter, the prosecution and defense made opening arguments. (TT1-163-167; 167-168).

(5) Ms. Ray, ex-wife of the deceased testified that she identified the body of the deceased at the morgue. (TT1--168-170).

6

(6) Mr. Thomas, a bouncer at the Indigo Club, testified that Petitioner was present at the club that evening, and identified him from a photograph which had been taken at the club that night. Petitioner was described as having 'pump waves' and a pony tail. (TT1-173). Mr. Thomas further testified that there was an argument that night but did not see Petitioner involved. Mr. Thomas started to move people outside of the building including the Petitioner. Moments later Mr. Thomas claims to have seen Petitioner outside the front door with a gun. Mr. Thomas then locked the front door of the club while someone involved in the argument was trying to get outside but the deceased, who was on the stairs was trying to keep that person inside. During the commotion a shot was fired. Mr. Thomas then saw Mr. Spann fall back and saw blood coming from his head. Mr. Thomas also identified various photographs taken of the front door of the club. (TT1-170--191).

(7) Mr. Thomas later admitted that he did not put Petitioner out of the club, that his statement to the police did not include who the shooter was, nor a description of the shooter or the Petitioner. Mr. Thomas did admit that this was his testimony at the preliminary examination. (TT1-191-230).

(8) Mr. Parker testified that he was the outside security man at the club, and on the evening in question he saw two men pass something back and forth while crossing the street in front of the club. Mr. Parker also heard a shot, then saw the same men get into a red car. However, he could not identify anyone, but described to the police a man with a fade haircut and another

7

man wearing a black and white outfit, and that he may have left something out of his statement. (TT2-3-23).

(9) Mr. Batts was a guest at the club who witnessed an argument and testified that Petitioner was involved in the argument. He also testified to seeing Petitioner being put out of the club along with three others. He then watched Petitioner and the others leave and upon return Petitioner was armed. Petitioner stood at the front door for a moment and then fired a shot through the front door. (TT2-23-30). He gave a description to the police and on the day of trial identified Petitioner for the first time from a group photograph. He also stated he heard someone say, " Don't pull that lemon squeeze trigger." This witness claims to have observed Petitioner from seven feet away, and also observed a security guard tell Petitioner to leave. This witness also claims to have seen Petitioner leave in a red car. (TT2-31-76).

(10) Mr. Rambus testified that he was at the club, that he was with Petitioner, saw the argument, told police the security people put Petitioner and another person out, that he saw Petitioner outside the club talking to his (witness) girlfriend, that he argued with his girlfriend, put her in a cab, heard a shot but did not see Petitioner with a gun, and gave a statement to the police. Mr. Rambus identified Petitioner from a photograph and stated Petitioner was wearing a jogging suit. (TT2-77-101).

(11) Ms. Willis testified that she was Petitioner's girlfriend, gave a statement to the police, that there was an argument that

8

night but did not see Petitioner involved, that she went outside saw Petitioner walking towards her, that he gave her the keys and told her to heat up the car. Ms. Willis gave a statement to the police indicating that Petitioner and Weasel talked in the car, that she did not see the shooting, that she drank a pint of Hennessey that night, that she was ordered to give a statement before she could go home and that Weasel and Petitioner had similar hairstyles. (TT2-101-139).

(12) Officer Richardson, an evidence technician testified that he prepared a sketch of the location, identified various photographs of the location, found a spent .45 shell casing in front of the club and that the street lights were out. (TT2-141-160).

(13) The waiver of witnesses was discussed. (TT2-161-166).

(14) Officer Pauch, firearms expert testified that he analyzed a .45 caliber shell casing, as well as a .38 caliber bullet and a .45 caliber cartridge, that he did not receive a gun to test and that only the .45 caliber bullet had identifiable marks. (TT2-166-174).

(15) Ms. Diquita Gibson testified that she was at the Indigo Club, that she saw the argument, that a person named JaJuan (Harrison) had a little handgun, that she left and was in the parking lot when she heard the shot, that Petitioner was not in the argument, and saw someone else with a gun. (TT2-174-185).

(16) Out of the presence of the jury, a discussion concerning witnesses and jury instructions were reviewed. (TT2-186-188; 216-222).

(17) Ms. Sheena Gibson testified that she saw the argument, that Petitioner was not involved, that she was in the parking lot when she heard the shot, that she also gave a statement to the police. (TT2-188-198).

(18) A due diligence hearing was conducted as to the admissibility of Mr. Kevin Colbert's preliminary examination testimony. After taking testimony from officer Peterson, the Court found that the requirements of due diligence had been met, and allowed his testimony from the preliminary examination to be read to the jury.(TT2-201-216).

(19) Dr. Kanluen testified that the cause of death was a gunshot wound to the back of the head, and that he did not know the caliber of the weapon. (TT3-4-17).

(20) The preliminary examination transcript of Mr. Colbert's testimony was read to the jury, then the prosecution rested. (TT3-11-34).

(21) The trial Court denied the defense motion for a directed verdict. (TT3-34-37).

(22) Ms. Mosley (defense witness) testified that she gave a statement to the police, did not see Petitioner that evening, that it was not Petitioner who did the shooting, that she was at her car when the shooting occurred and that the street lights were out. (TT3-37-57). The defense subsequently rested. (TT3-57).

(23) Jury instructions were again reviewed. (TT3-59-63). Thereafter, the prosecution and the defense made their closing arguments. (TT3-63-85; 86-123; 123-139). Thereafter, the jury

10

was instructed. (TT4-1-21).

(24) Petitioner was found guilty as charged.

(25) On February 25, 1997, before the Honorable Judge Sapala, the presentence report was reviewed and corrected. (ST-3-4). Allocution was made by the Petitioner. (ST-4-9, 16). The Court received comments from the decedent's family. (ST-9-15). The Petitioner was sentenced to life without the possibility of parole to be served consecutive to the mandatory two year term for his felony firearm conviction. From this judgment of sentence Petitioner seeks habeas relief.

11

GROUNDS FOR RELIEF

> I. PETITIONER'S CONVICTION MUST BE OVERTURNED
> BECAUSE THERE WAS INSUFFICIENT EVIDENCE
> TO FIND FOR THE OFFENSE OF PREMEDITATED
> MURDER. THUS, THE MOTION FOR DIRECTED
> VERDICT SHOULD HAVE BEEN GRANTED.

### STANDARD OF REVIEW

In reviewing claims of insufficient evidence, the reviewing court must consider the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that all of the essential elements of the offense were proven beyond a reasonable doubt. People v Hampton, 407 Mich 354; 285 NW2d 284 (1979)); cert den, 449 US 885; 101 S Ct 239; 66 L Ed2d 110 (1980); Jackson v Virginia, 443 US 307; 99 S Ct 2781; 61 L Ed2d 560 (1979).

### DISCUSSION

In the present case Petitioner was convicted of first degree premeditated murder, and felony firearm. Petitioner contends that the evidence (viewed in a light most favorable to the prosecutor) is insufficient to support a conviction for first degree premeditated murder. Thus, Petitioner's convictions must be overturned.

In order to sustain a conviction for first degree premeditated murder the prosecutor must prove each element beyond a reasonable doubt. In re Winship, 397 US 358; 90 S Ct 1068; 25 L Ed2d 368 (1970). The elements of first degree murder are: The killing of a human being with the intent to kill or do great bodily harm with wanton and willful disregard of the likelihood that the natural tendency of one's actions will be to cause

death or great bodily harm. People v Johnson, 208 Mich App 137; 531 NW2d 780 (1994). In Michigan first degree murder is second degree common law murder plus an element, either premeditation or attempt to perpetrate an enumerated felony. People v Carter, 395 Mich 434; 236 NW2d 500 (1975). The prosecutor's theory was that Petitioner deliberately killed Rudolph Spann. To support this charge the prosecutor must prove beyond a reasonable doubt that Petitioner acted with premeditation.

Premeditation may be established through the prior relationship of the parties; the defendant's actions before the killing, the circumstances of the killing itself and the defendant's conduct after the homicide. People v Anderson, 209 Mich App 527,537; 531 NW2d 780 (1994).

Trial testimony showed that Petitioner was peripherally involved in an argument at the club, was escorted out, returned with a gun and subsequently fired a shot through the front door of the club. Afterwards Petitioner showed considerable remorse, even to the point of tears. (TT2-27,30,109,111). Petitioner's acts leading up to and after the homicide is not consistent with the necessary premeditation needed to support a first degree murder conviction. Thus, Petitioner asserts that under this set of facts no reasonable inference of premeditation can be established.

A material issue in this case is the identity of the shooter. Although three witnesses placed a gun in Petitioner's hand, the only one to claim to actually have seen Petitioner fire the fatal shot identified Petitioner under very dubious

13

circumstances.

Mr. Thomas testified at trial that Petitioner had a weapon. (TT2-181-182). However, he did not tell the police that he had seen a man with a gun. (TT2-212,214).

Mr. Batts claim to observed Petitioner pull the trigger. (TT2-30). Mr. Batts admits that he did not 'personally know the Petitioner' and that he did not identify Petitioner until almost a year later.[1] (TT2-34-35).

Kevin Colbert's (A.K.A. Weasel) testimony was read to the jury from the preliminary examination transcript. (See Argument II). Mr. Colbert stated that Petitioner had a gun and that he seen Petitioner fire a shot through the front door of the club. (TT4-14-15). It is noteworthy that Mr. Colbert was also a suspect in this crime and was arrested and questioned. (TT2-126).

Viewing this evidence in a light most favorable to the prosecution one could reasonably conclude that Mr. Colbert was the shooter and that Petitioner was peripherally involved in the shooting. While there may be many reasonably conclusions to this set of facts, it is unreasonable to conclude that Petitioner acted with 'premeditation.'

The prosecution argued that the fact that Petitioner possessed a .45 automatic is sufficient to satisfy his burden of proof regarding 'specific intent.' (TT4-75). Under Michigan law reasonable inferences may be drawn from established facts. People v Ateley, 392 Mich 298,314-315; 220 NW2d 465 (1974).

---

(1) The photo show-up that Mr. Batts identified Petitioner from is clearly illegal under People v Anderson, 389 Mich 155,186-187 (1973). (For emphasis see Argument III).

People v Young, 114 Mich App 61; 318 NW2d 606 (1982). When the evidence establishes a fight and then a killing, there must be a showing of a 'thought process undisturbed by hot blood' in order to establish first degree premeditated murder...The critical inquiry is not only whether the defendant had time to premeditate, but also whether he had the capacity to do so. Without such evidence, the sequence of events is as consistent with an unpremeditated killing-following hard on the outset of an argument-as it is with a premeditated killing after an interval during which there was an opportunity for cool headed reflection. People v Plummer, 229 Mich App 293; ___ NW2d ___ (1998) id pp 301-302; citing People v Gill, 43 Mich App 598; 204 NW2d 699 (1972). It is reversible error to allow an inference to kill to be based on simple weapon possession. id.

The evidence in this case shows that when Petitioner came back to the club, Trice (the other person involved in the argument) was attempting to get at the Petitioner. (TT1-184-185). There was also evidence that a friend of Trice possessed a gun. (TT2-177). This individual was also on the steps at the time of the shooting. (TT2-184-185). The record is unclear as to whether or not the individual flashed his weapon at Petitioner.

Whatever the reason for the shooting, the prosecution has presented no direct evidence that the intoxicated Petitioner intended to kill anyone. At best the evidence shows that a single gunshot was fired at the front door in the dark and that there was sufficient provocation suggesting more properly a second

15

degree or involuntary manslaughter conviction.

Second degree murder occurs when someone acts with a wanton and willful disregard that the likelihood of their actions would cause death or great bodily harm. See People v Johnson, supra, 208 Mich App at 140. Involuntary manslaughter occurs when death results from the negligence which is gross, wanton or willful, or criminal indicating a culpable indifference to the saftey of others. People v Ratelle, 173 Mich App 196,199; 433 NW2d 535 (1975). Although the jury was instructed on second degree murder and manslaughter, Petitioner's chances of acquittal were substantially decreased by the possibility of a compromised verdict.

Where the reviewing court is in 'grave doubt' whether the error complained of had a substantial and injurious effect, the error can not be deemed harmless and the court must find in favor of the defendant. O'Neil v McAninch, 115 S Ct 992; 130 L Ed2d 947 (1995). 'Grave doubt' in this context means that in the judge's mind the matter is so evenly balanced the judge is in virtual equipoise as to the harmlessness of the error. id.

In a case such as this where there is no solid proof that Petitioner premeditated the murder of Rudolph Spann, or anyone else, Petitioner is entitled to the benefit of the doubt. O'Neil v McAninch, supra. Petitioner contends that the facts of this case could have easily supported a second degree or manslaughter conviction.

Petitioner's first degree murder as it stands violates

his V, VI, & XIV Amendment rights to due process and a fair trial where each element of the offense was not proven beyond a reasonable doubt. Thus, Petitioner's first degree murder conviction must be overturned.

> II. PETITIONER'S CONVICTION SHOULD BE REVERSED BECAUSE THE TRIAL COURT IMPROPERLY PERMITTED ADMISSION OF THE PRELIMINARY EXAMINATION TESTIMONY FINDING THAT DUE DILIGENCE HAD BEEN SHOWN.

### STANDARD OF REVIEW

The admission of former testimony of an unavailable witness is governed by MRE 804(b)(1). The finding of due diligence is a finding of fact which is reviewed for clear error. Thus, the trial court's admission of evidence is reviewed for an abuse of discretion. People v Briseno, 211 Mich App 11,14; 535 NW2d 559 (1995), citations omitted. The test is whether the proponent of the evidence made good faith efforts to procure the testimony, not whether more stringent efforts would have produced it. People v Conner, 182 Mich App 674,681; 452 NW2d 877 (1990); Accord, Ohio v Roberts, 448 US 56,74; 100 S Ct 2531,2543; 65 L Ed2d 597 (1980), citations omitted.

### DISCUSSION

Petitioner asserts that the trial court 'clearly erred' in finding that the prosecutor had exercised 'due diligence' in attempting to secure Mr. Colbert's attendance at trial. As a result Petitioner was denied his right to confrontation under US Const Am VI & Mich Const 1963, Art 1, §20. Thus, Petitioner must be given a new trial where the prosecution must exercise 'due diligence' in securing Mr. Colbert's attendance or his testimony must be excluded.

The Sixth Amendment right to confrontation is made obligatory to the states by the due process clause of the Fourteenth Amendment. <u>Pointer v Texas</u>, 380 US 400; 85 S Ct 1065; 13 L Ed2d 923 (1965). Petitioner asserts that this right was violated when the trial court allowed the preliminary examination testimony to be read to the jury.

The preliminary examination was conducted on April 23, 1996, almost a year previous to the date of trial. During that time no effort was made to ascertain the whereabouts of the witness, nor was any effort made to insure his attendance at trial. During that year the witness had no contact with the prosecutor's office nor had any subpoenas been issued.

Even though the prosecutor was aware of this witness at the preliminary examination, Sgt. Peterson did not receive the file until 2½ days before trial. There is no evidence in the record that Sgt. Peterson communicated with the officer in charge before him to determine whether he or she had any information as to the whereabouts of Mr. Colbert. Petitioner asserts that the prosecution's efforts came too little to late.

Under Michigan law a transcript of prior testimony may be offered into evidence upon a showing that the witness is unavailable and that the testimony bears a sufficient indica of reliability. <u>People v Dye</u>, 431 Mich 58,64; 427 NW2d 501 (1988). (footnote omitted). To establish the unavailability of a witness, the proponent must establish that he has made a 'diligent' good faith effort to obtain the witness' presence at trial. id. p 66.

Because the admission of prior testimony infringes on a defendant's constitutional right to be confronted with the witnesses against him, the prosecutor's burden of due diligence is substantial. People v James, 184 Mich App 457,467; 458 NW2d 911 (1990).

The United States Supreme Court has emphasized that the confrontation clause reflects a preference for 'face to face' confrontation at trial, Ohio v Roberts, supra, 448 US at 63, stating:

> "A personal examination and cross examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him and judge his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief. These means of testing accuracy are so important that the absence of 'proper confrontation' at trial 'calls into question the ultimate integrity of the fact finding process.' id 448 US at 64. emphasis added, cites omitted. See also Barber v Page, 390 US 719; 88 S Ct 1318 (1968).

Where a witness' testimony is read from the jury box as in this case, the defendant is striped of his right to confront the witness against him and to have the jury judge that witness' demeanor to determine whether he/she is worthy of belief.

It is established that a defendant's right to confrontation may be dispensed with under certain circumstances. Ohio v Roberts, supra, 448 US at 64. Exceptions to the confrontation clause may only be tolerated under the following circumstances:

(1) The witness is unavailable because of a ruling of the court on the ground of privilege from testifying on the subject matter of his statement;

(2) Refusal of the witness to testify despite court order to do so;

(3) The witness has a lack of memory because of psychological or physical factors;

(4) Death of a witness or physical infirmity, or;

(5) The witness is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means, and in a criminal trial 'due diligence' is shown. See MRE 804(a). The fact that the court rules require an additional showing of 'due diligence' in criminal cases shows reluctance of Michigan courts to contravene a defendant's right to confrontation absent compelling circumstances. None of which are present here.

In the present case the Michigan Court of Appeals held that the trial court did not err in admitting the preliminary examination testimony of Mr. Colbert. (Opinion pp 2-3). Petitioner asserts that this ruling constitutes an abuse of discretion. An abuse of discretion occurs when the result is so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will...not the exercise of reason but rather of passion or bias. Spalding v Spalding, 355 Mich 382,384-385; 94 NW2d 810 (1959).

As previously noted, before prior testimony may be admitted against the accused, the prosecutor must show that the declarant is unavailable and that he has exercised 'due diligence' in attempting to procure the presence of the witness at trial. People v Dye, supra, 431 Mich at 66; People v James, supra,

20

184 Mich App at 467. The phrase due diligence is defined as:

> Such a measure of prudence, activity, or assisduity,
> as is properly to be expected from and ordinarily
> exercised by a reasonable and prudent man under the
> particular circumstances; not measured by any abso-
> lute standard, but depending on the relative facts
> of the special case. Black's Law, 5th Ed (1979), p
> 411.

Due diligence requires the prosecution to take reasonable steps in locating witnesses. People v Cummings, 171 Mich App 577,585; 430 NW2d 790 (1988). In order to demonstrate due diligence, the prosecutor must not only follow up on specific leads, but must take steps likely to produce leads on the witness' whereabouts. People v Starr, 89 Mich 342; 280 NW2d 519 (1979). While all avenues do not have to be exhausted, there must be a reasonable 'good faith' effort to secure the witness' presence at trial. Briseno, supra, 211 Mich App at 14. If there is not a possibility of securing the witness, 'good faith' demands nothing of the prosecutor. But if there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of 'good faith' may demand their effectuation. Ohio v Roberts, supra, 448 US at 74.

At trial a 'due diligence' hearing was held to determine whether the prosecutor has satisfied his burden of proving the unavailability of the missing witness and the admissibility of his prior testimony. (TT2-201-216).

During the hearing Sgt. Peterson testified to taking the following measures to procure Kevin Colbert's attendance at trial:

(1) He (Sgt. Peterson) was assigned the case on the evening

21

of Friday January 31, 1997. Trial started on Monday February 3, 1997. (TT2-201);

(2) Visited Mr. Colbert's address of record and spoke with Mr. Colbert's mother who had not spoke with Mr. Colbert in a couple of months. (TT2-202);

(3) Spoke with Mr. Colbert's brother on Monday (first day of trial) February 3, 1997, and was told that Mr. Colbert may be staying with his mother, and that he seen Mr. Colbert just two days ago. (TT2-203);

(4) Spoke with Mr. Ruben Rambus outside the courtroom and was told that Mr. Colbert said that he wouldn't come to trial unless he was served with a subpoena. (TT2-203);

(5) Spoke with Mr. Radclif at a building on Bewick where Mr. Colbert's girlfriend lives. Sgt. Peterson did not speak with Mr. Colbert's girlfriend. (TT2-203);

(6) Checked with some hospitals, Receiving, St. John's and other east side hospitals, and the morgue. (TT2-204);

(7) Checked aliases and secretary of state which directed him back to Mr. Colbert's address of record. (TT2-204).

The Court subsequently ruled that Mr. Colbert's testimony would be admissible and refused to give CJI 5.12, (TT2-216).

The Court gave the following reasons for its decision:

"I think the only fact that makes this issue close at all is the fact that Sgt. Peterson was only given the file three days or so prior to the beginning of trial. It is unfortunate from the prosecutor's point of view that he wasn't assigned the case some weeks if not months ago." (Emphasis added).

"But on the other hand, the defense I think is asking us to impose a bright line rule, that being if efforts

22

are made to get a witness in but three days before trial, notwithstanding whatever efforts are made, due diligence can't be shown because that would be the result of a ruling adverse to the People here because the efforts were not just admirable, the efforts made by Sgt. Peterson were extra-ordinary."

"I can't imagine one officer doing much more than he did in attempting to get this witness in, and I think that that's what makes the difference in this case."

"Once he was assigned this case, Sgt. Peterson certainly gives the impression of spending considerable time on this issue, contact with relatives, tracing down hosp-itals and then getting the information that the witness on top of everything else appears to be a reluctant witness."

"Of course, he has every right to tell the authorities I won't come unless I get a subpoena. But the import-ant thing is the attitude that it shows in terms of efforts on this issue understandably not only could Sgt. Peterson not find the witness, but apparently his own family couldn't find him."

"The mother said he hadn't lived with her in two months. Yet the brother thought he was living with the mother. And we don't know to what extent they were being truthful or not."

"My sense is there may well not have been all of these aliases and various addresses. The fact that someone said that he's not known on Bewick, when apparently it's reasonable to believe he had a relationship to the home on Bewick certainly indicates somebody for whom service would be difficult. You could give a new trial date, set this case over for four or five months. I don't imagine that witness would be found."

"No. I found under the unique circumstances of this case that extraordinary diligence was exercised and that excuses the fact that the search began only on friday."

"So the instruction will not be given, and number two, the prosecution may introduce the testimony of the witness given at the time of the preliminary examinat-ion."

While the court recognized that this was a 'close call', the Court nonetheless erred.

Mr. Colbert was unavailable because of inexcusable neglect on the part of the prosecution. In Motes v US, 178 US 458; 20 S Ct 993; 44 L Ed 1150 (1900), the court held that police negligence barred a finding of good faith, diligent effort. In Motes a co-defendant escaped due to the negligence of the police and his preliminary examination testimony was admitted at trial. The United States Supreme Court reversed stating:

> "We are unwilling to hold it consistent with the constitutional requirement that an accused shall be confronted with the witness against him, to permit the disposition or statement of an absent witness (taken at an examining trial) to be read at the final trial when it does not appear that the witness was absent by the suggestion, connivance, or procurement of the accused, but does appear that his absence was due to the negligence of the prosecutor." id 178 US at 474.

It is established that Sgt. Peterson did not start attempting to serve Mr. Colbert until Friday evening, $2\frac{1}{2}$ days before the start of trial. The record also suggests that Mr. Colbert was not aware of when the trial was supposed to start. (TT2-206).

Clearly it is unreasonable to wait until the weekend before trial to start attempts to serve a subpoena on a res gestae witness. Especially where as in this case the police had arrested the witness for the same crime (TT2-126), and was aware of his many aliases.

Michigan courts have previously refused to find due diligence where the prosecutor or police were clearly negligent. See People v Dye, supra, where the lead opinion reviewed in detail the prosecution's efforts to locate witnesses. 431 Mich at 68-73. The Court concluded that the prosecution did not show due diligence, noting that the efforts were 'tardy' and

24

incomplete. 431 Mich at 68,78; Accord <u>People v James</u>, supra, where the prosecutor mailed the subpoena to the witness by regular mail and made no other efforts to contact the key witness before trial. A continuance was granted and while the police made 'extensive efforts' to locate the missing witness, the Court concluded that although the efforts to secure the missing witness was extensive they came too little too late in the proceedings to constitute a diligent good faith effort. 184 Mich App at 467-468.

In <u>Washington v Smith</u>, 48 F Supp2d 1149 (ED Wis, 1999), the court stated:

> "It has been held that diligence is not shown where counsel waits to secure issuance of process for an absent witness until the day the case is called for trial, or until the trial has actually begun, or until an unreasonably short time before the trial is scheduled to begin..." id 48 F Supp2d at 1159, citations omitted.

In <u>Washington v Smith</u>, supra, counsel was found to be ineffective in part because his lack of diligence in securing defendant's alibi witness. See also, <u>US v Quinn</u>, 901 F2d 522,528-529 (6th Cir, 1990).Where the government did not attempt to subpoena missing witness until the Thursday before trial which started on Monday. The Court ruled that under this set of facts there was no 'good faith effort' and reversed Petitioner's conviction.

Petitioner asserts the prosecutor's efforts in this case were tardy and incomplete. Sgt. Peterson never checked the local jails, nor did he check with Detroit, Edison, Michcon, Department of Social Services, AT & T phone company, nor any other utility, phone, or gas company to try and obtain a current address.

25

Petitioner contends that an unbiased person considering the facts on which the trial Court relied, would conclude that there was no justification for the finding of due diligence in the prosecution's attempts to locate Mr. Colbert. <u>People v Briseno</u>, supra, 211 Mich App at 14, and cases cited.

Petitioner does not propose to make a bright line rule preventing a finding of due diligence on the sole basis of tardy efforts to locate missing witnesses. However, Petitioner asks this Honorable Court to find that under the facts of this case that the inexcusable prosecutorial neglect prevents a finding of due diligence and that the admission of Mr. Colbert's prior testimony violated Petitioner's right to confrontation under the Sixth Amendment. <u>US v Quinn</u>, supra; <u>People v James</u>, supra; <u>People v Dye</u>, supra; <u>Motes v US</u>, supra.

III

PETITIONER WAS DENIED EFFECTIVE ASSISTANCE
OF APPELLATE COUNSEL AS GUARANTEED BY CONST
1963, ART 1, §20; US CONST AM VI & XIV.

## STANDARD OF REVIEW

To show ineffective assistance of counsel Defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v Washington, 466 US 668;104 S Ct 2052;80 L Ed2d 674 (1984). The Strickland standard is the proper standard for reviewing ineffective assistance of appellate counsel. Ratliff v US, 999 F2d 1023,1026 (CA 6, 1993); People v Reed, 449 Mich 375;535 NW2d (1995).

## DISCUSSION

Petitioner contends he was denied a full and fair appeal as of right as guaranteed by Const 1963, Art 1, §20; US Const Am VI & XIV, by virtue of counsel's failure to: 1) Raise a viable ineffective assistance of trial counsel claim based on counsel's failure to move for suppression of illegal line-up and subsequent identification testimony, failure to interview res gestae witness, & failure to present a meritorious defense which would have led to acquittal. Thus, appellate counsel's failure to raise this issue which would have mandated reversal constitutes ineffective assistance.

In Michigan a criminal defendant pursuing an appeal as of right is entitled to the effective assistance of counsel People v Pauli, 138 Mich App 530,534;361 NW2d 359 (1984); lv den 422 Mich 930 (1985) citations omitted. First appeal as of right is not fully adjudicated in accord with due process of

27

law if the accused does not have the effective assistance of
attorney. <u>Evitts v Lucey</u>, 469 US 387;105 S Ct 830;83 L Ed2d
821 (1985).

The test for determining whether counsel is ineffective
for failing to raise a particular issue is whether there is
a reasonable probability that but for counsel's errors the result
of the proceeding would have been different. <u>Strickland</u>, supra,
466 US at 694;104 S Ct at 2068; <u>Agan v Singletary</u>, 12 F3d
1012,1018 (CA 11, 1994); <u>Mayo v Henderson</u>, 13 F3d 528 (CA 2,
1994).

In determining whether an issue would have prevailed on
appeal some federal circuits compare the strengths and weaknesses
of the issues. <u>Gray v Greer</u>, 800 F2d 644 (CA 7, 1985). In <u>People
v Reed</u>, supra, three justices indicated that they would reject
that approach. As this point did not command a majority of the
justices, it is not binding. <u>Negri v Slotkin</u>, 397 Mich
105,107;244 NW2d 98 (1976). Moreover, the <u>Reed</u> court 'did not
hold' that a court cannot compare the strength of proposed issues
and previously raised issues as part of its determination whether
an issue was actually abandoned as a matter of appellate
strategy.

Although appellate counsel does not have to raise all
nonfrivolous issues, <u>Jones v Barnes</u>, 463 US 745;103 S Ct 3308;77
L Ed2d 987 (1983), an appellate advocate may render deficient
performance and prejudice a defendant by omitting a 'dead bang
winner' even though counsel may have presented strong but
unsuccessful claims on appeal. <u>US v Cook</u>, 45 F3d 388,395 (CA

(CA 10, 1995),citing [Page v US, 884 F2d 300,302 (CA 7, 1989)].

The Cook court defined 'dead bang winner'as issue[s] which are obvious from the record. id. [citing Matire v Wainwright, 811 F2d 1430,1438 (CA 11, 1987)]; See also Murray v Carrier, 477 US 478,496;106 S Ct 2639,2649;91 L Ed2d 397 (1986), recognizing that the right to counsel may be violated by isolated error of counsel if that error is sufficient egregious and prejudicial. Accord, People v Degrafenreid, 19 Mich App 702,716; 173 NW2d 317 (1969), holding, [W]here the lawyer's mistake is of such serious propertion that it may have been decisive...the court may, despite failure to have preserved the error by timely objection grant a new trial.

Petitioner asserts that appellate counsel's failure to raise a viable ineffective assistance of trial counsel claim under the facts of this record constitutes deficeint performance suficient to undermine confidence in the outcome of the appeal. Appellate counsel's inaction was objectively unreasonable and fell below the wide range of competent assistance.

ILLEGAL SHOWUP

In People v Anderson, 389 Mich 155;205 NW2d 461 (1973), the court established two rules governing photographic identification procedures:

(1) Subject to certain exceptions identification by photograph should not be used where the accused is in custody. Emphasis added.

(2) Where there is a legitimate reason to use photographs for identification of an in custody accused, he has the right

29

to counsel as much as he would for corporeal identification procedures. (emphasis in original). 389 Mich at 186-187. In a footnote the <u>Anderson</u> court set forth exceptions to the prohibition against conducting photo line-ups of an in custody accused:

---

22) See Wall, pp 42,72-73. Some of the situations which may, in a particular case possibly justify the use of photographs are:
(1) It is not possible to arrange a proper lineup.
(2) There are insufficient number of persons available with defenant's physical characteristics.
(3) The nature of the case requires immediate identification.
(4) The witnesses are at a place far distant from the location of the in-custody accused.
(5) The subject refuses to participate in a lineup and by his actions would seek to destroy the value of identification.

We express no opinion on the situation where photographs are taken of a corporeal lineup that was fair in all respects and where the accused was represented by counsel and these photographs are later shown to witnesses who had not observed the lineup. See United States v Brown, 149 US App DC 43,54 ff;461 F2d 134,145 ff (1972); US v Collins, 416 F2d 696 (CA 4, 1969).

---

In the present case none of the factors existed which would justify conducting a photographic line-up while the Petitioner was in custody.The fact that counsel was present does not nullify he the rule which prohibits identifiction by photograph absent exigent circumstances. The <u>Anderson</u> court created rules governing the use of photographic identification procedures because of their distrust in photographic identifications. See <u>People v Kurylczyk</u>, 443 Mich 289,298;505 NW2d 528,532 (1993), interpreting the <u>Anderson</u> rules.

The proper remedy for violations of the <u>Anderson</u> rule which forbids identification of an in-custody accused by photograph is to exclude direct testimonial evidence concerning any

30

identification made at that procedure. <u>Anderson</u>, supra, 389 Mich at 156. Before an identification may be attempted at trial the prosecutor must prove by 'clear and convincing' evidence that the in-court identification is independent of the suggestive procedure. id. See also <u>James</u>, supra, 184 Mich App at 465.

As an advocate defense counsel has a duty to bring to bear such skill and knowledge as will render the trial [appeal] a reliable adversarial testing process. <u>Strickland</u>, supra, 466 US 688;104 S Ct 2065. The likelihood for success of this claim is substantial. Notwithstanding the blatant violation of the <u>Anderson</u> rule, the line-up itself was impermissibly suggestive where Petitioner was the only one to resemble the description of the perpetrator.

Differences in the line-up are significant only to the extent that they are apparent to the witness. <u>James</u>, supra, 184 Mich App at 465. In <u>US v Fernandez</u>, 456 F2d 638 (CA 2, 1972), where surveillance photographs showed robber to be a light skinned individual with a afro haircut the court held that the use of a six photo array where one of the six even remotely resembled that description was impermissibly suggestive. id at 641-642. See also <u>People v Wilson</u>, 20 Mich App 410;174 NW2d 79 (1969), where the court held that line-up consisting of accused and four men, each of whom was at least $3\frac{1}{2}$ inches taller than defendant, was so suggestive as to violate due process and testimony regarding such line should have been excluded.

Eyewitness Mr. Batts did not attend a live show-up nor did he testify at the preliminary examination. The crime occurred

on March 30, 1996. Mr. Batts identified Petitioner for the first time by photograph almost a year after the crime occurred and right before he (Mr. Batts) took the witness stand. Trial counsel never objected and allowed the fruit of this illegal show-up to go before the jury.

It cannot be said that counsel's inaction was harmless. The only other evidence implicating Petitioner as the shooter was the ghost testimony of Mr. Kevin Colbert (who was also arrested in connection with this crime). Mr. Colbert testified atthe preliminary examination that Petitioner was the gunman. However, Mr. Colbert did not testify at trial. See argument II. Even if this court finds that 'due diligence' was shown the jury may have been less likely to believe the lone incriminating testimony of a ghost witness.

Petitioner contends that appellate counsel failed as an advocate by foregoing a viable ineffective assistance of trial counsel claim. Counsel is constitutionally deficient if performance below professional norms causes the defendant to lose what he would have otherwise won. West v Seabold, 73 F3d 81,84 (CA 6, 1996) citation omitted. Ratliff, supra, 999 F2d at 1026.

FAILURE TO INTERVIEW RES GESTAE WITNESS

In preparing for trial counsel has a duty to make reasonable investigations or to make reasonable decisions that makes particular investigations unnecessary. Strickland, supra, 466 US at 691;104 S Ct at 2066. In the present case it is well established that Petitioner was peripherally involved in an

32

argument with 'Trice'. It is also established from the record that 'Trice' was on the stairs at the time of the shooting. Petitioner contends that counsel should have interviewed Trice and subpoenaed him as a witness.

In determining whether counsel was ineffective for failing to interview certain witnesses, the test is whether counsel's inaction resulted in his ignorance of valuable evidence which would have substantially benefited the accused. People v Caballero, 184 Mich App 636,642;459 NW2d 80 (1990); lv den 437 Mich 884, citations omitted. Petitioner contends that Trice would have provided information that 'Weasel' also had a gun and that he had 'cocked it back' right before the shot went off.

Trice's testimony would have assisted the defense substantially. Trial testimony had already established that there was two different types of bullet casings at the crime scene. Petitioner contends that it was 'Weasel' that had the .45 automatic. This prospective testimony considered with the fact that Mr. Colbert (Weasel) was not present to personally give his testimony may have led the jury to believe that it was in fact ('Weasel') Mr. Colbert that did the shooting. It is professionally unreasonable not to interview promising witnesses that may be of help to the defense. See Groseclose v Bell, 895 F Supp 935,957 (MD Tenn, 1995); aff'd 130 F3d 1161 (CA 6, 1997).

Although trial counsel did not formally announce a defense theory the strategy appeared to be one which raised the possibility that someone else fired the fatal shot. The record

33

clearly reveals that Trice was not called as a witness. It would take a hearing pursuant to <u>Alcorn v Smith</u>, 781 F2d 58,60,61 (6th Cir,1986), to determine whether or not such strategy was reasonable under prevailing professional norms. If it is found that counsel completely failed to investigate this witness (as Petitioner alleges) counsel's inaction constitutes negligence not trial strategy. <u>Workman v Take</u>, 957 F2d 1339,1345 (CA 6, 1992); <u>Lewis v Alexander</u>, 11 F3d 1339 (Ca 6, 1993). Under Michigan law an accused is entitled to relief where his counsel's failure to present witnesses deprives him of a substantial defense. <u>People v Wilson</u>, 159 Mich App 345,354;406 NW2d 294 (1987); <u>People v Bass</u>, (on Reh), 223 Mich App 241,252-253;565 NW2d 897 (1997).

Trial counsel's failure to challenge the admission of the in-court identification testimony on the basis of a violation of the <u>Anderson</u> rule and failing to interview res gestae witness Trice was tantamount to failing to present a defense as required by the Sixth Amendment and Mich Const 1963, Art 1, §20. Counsel has a duty to make the prosecution's case survive the crucible of meaningful adversarial testing. <u>US v Cronic</u>, 466 US 648,656;104 S Ct 2039,2045;80 L Ed2d 657 (1984).

As a result of appellate counsel's failure to raise a viable ineffective assistance of trial counsel claim which was 'clearly' evident from the trial record Petitioner was denied a full and fair appeal in accord with due process of law. <u>Evitts v Lucey</u>, supra; US Const Am XIV; Mich Const 1963, Art 1, §20.

34

## RELIEF REQUESTED

Petitioner respectfully requests that this Honorable Court conduct fact finding hearings if needed for just adjudication of this Petition, appoint counsel for such hearings, grant his Petition for a Writ of Habeas Corpus and grant any other appropriate relief justice may require.

## VERIFICATION

I Manuel L. Spillman, after first being duly sworn, deposes and says under the penalty of perjury, that the facts stated in this Petition are true to the best of my information, knowledge and belief, and the legal arguments are meritorious based on existing Constitutional law and not filed to harass, waste the Court's time or for any other improper purpose.

Respectfully submitted,

Date: 4-26-2000

Manuel L Spillman

Manuel Spillman #203663
3201 Bemis Rd.
Ypsilanti, MI 48197

Subscribed and sworn to before
me on this 26 __ day of ~~March~~ April
2000.

Notary Public

35

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

RECEIVED

MAY - 9 2000

CLERK'S OFFICE
U.S. DISTRICT COURT

File No._____

| | | |
|---|---|---|
| MANUEL L. SPILLMAN<br>  Petitioner, | ) | Michigan Supreme Court<br>No.114022 |
| | ) | |
| vs | ) | Michigan Court of Appeals<br>No.203438 |
| | ) | |
| ANDREW JACKSON (WARDEN)<br>  Respondent. | ) | Lower Court<br>No.96-003268 |

DENISE PAGE HOOD

MAGISTRATE JUDGE CARLSON

MANUEL L. SPILLMAN
Petitioner in Pro Per
3201 Bemis Rd.
Ypsilanti, MI 48197
Huron Valley Men's Facility

ANDREW JACKSON (WARDEN)
Respondent
Huron Valley Men's Facility

JENNIFER M. GRANHOLM
Attorney General of Michigan
Counsel for Respondent
525 W. Ottawa
P.O. Box 30212
Lansing, MI 48909

## PROOF OF SERVICE

I Manuel Spillman, after first being duly sworn deposes
and states that on this 26th day of April 2000,
I mailed a complete copy of Petitioner's Petition for a Writ
of Habeas Corpus to JENNIFER GRANHOLM, counsel for Respondent
by placing same in envelope with sufficient postage and handing
to prison officials for delivery via US Mail.

Date: 4-26-2000

Manuel L. Spillman
Manuel L. Spillman

Subscribed and sworn to before me
on this 26 day of APRIL
2000.

Mr._____
Notary Public